IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Keron Heslin-Kim, )<br>Individually as Personal Representative )<br>of the Estate of Joseph Alexander Heslin, Jr. )<br>and on behalf of the Beneficiaries )<br>of the CIGNA Life Insurance Policy )<br>9902939 )<br>            Plaintiff, )<br>)<br>vs. )<br>)<br>CIGNA Group Insurance, )<br>            Defendant )<br>_____ ) | C.A. No. 9:04-23197-23<br>**ORDER** |

This matter is before the court upon Defendant's motion for partial summary adjudication. In its motion, Defendant seeks a decision from this court as to whether the law of Georgia or South Carolina will apply in this insurance coverage dispute. For the reasons set forth herein, the court denies Defendant's motion for a partial summary adjudication that Georgia law governs the insurance contract. South Carolina law will be applied to this dispute.

**BACKGROUND**

On November 4, 2004, Plaintiff Keron Heslin-Kim ("Heslin-Kim") filed a complaint against Connecticut General Life Insurance Company ("Connecticut General") in the Court of Common Pleas for Beaufort County, alleging breach of contract and bad faith refusal to pay first party benefits under a supplemental coverage insurance policy.[1] Heslin-Kim represents the

---

[1] Defendant is incorrectly identified in the Complaint as "CIGNA Group Insurance," but should be identified as Connecticut General Life Insurance Company. "CIGNA Group Insurance" is a service mark and not a legal entity. On April 19, 2005, Plaintiff moved to amend the Complaint to name Connecticut General as the Defendant. The Defendant does not oppose this amendment, as Connecticut General is in fact the legal entity that issued the disputed insurance policy.

estate of Dr. Joseph Alexander Heslin, Jr. ("Dr. Helsin") and the beneficiaries of CIGNA Life Insurance Policy No. 9902939.

Dr. Heslin was employed by Fort Valley State University and Savannah State University. Beginning in November 1983, Dr. Heslin was insured under Connecticut General's group life insurance policy through the Board of Regents of the University System of Georgia. In December 1987, Dr. Heslin amended his election to include supplemental coverage in the amount of $100,000, effective on January 1, 1988. The supplemental coverage plan allowed a retiree to continue to carry an amount of supplemental life insurance up to $15,000 after retirement as long as the supplemental coverage was in effect for ten years prior to retirement.[2]

After moving to South Carolina in 1996, Dr. Heslin retired on January 1, 1997, exactly nine years after adding supplemental coverage.[3] Dr. Heslin was automatically covered by $25,000 in basic life insurance as a retiree. However, Dr. Heslin, unaware of the restrictive provisions of the supplemental policy, continued to make full premium payments on the supplemental coverage to Connecticut General through Fort Valley State University. Connecticut General claims it was unaware of these payments, as the policy is self-administered. In other words, under the policy, Fort Valley State University monitored eligibility and the amount of coverage and then submitted premium payments to Connecticut General.

Dr. Heslin died in November 2002, and the estate was probated in Beaufort County,

---

[2] The restrictive terms of the supplemental policy are not in dispute.

[3] From 1988 to his death in 2002, Dr. Heslin made premium payments as required by the supplemental policy. As explained above, these payments were remitted to Connecticut General through Fort Valley State University. In Defendant's Motion to Amend Its Answer filed on June 10, 2005, Connecticut General disputes the timely payments of the three months preceding Dr. Heslin's death.

South Carolina. Connecticut General paid the estate $25,000 in basic life insurance, but denied the supplemental claim. Connecticut General refuses to pay because, under the strict language of the policy, Dr. Heslin was ineligible for coverage since he did not carry the supplemental coverage for 10 years prior to retirement. Additionally, pursuant to the policy's provisions, after retirement Dr. Heslin would not have been allowed to carry supplemental insurance over the amount of $15,000. Heslin-Kim, on behalf of the estate and the policy's beneficiaries, argues that Connecticut General's acceptance of almost seven years of supplemental premium payments constitutes estoppel and prevents Connecticut General from denying coverage.

Connecticut General removed the case to federal court on December 8, 2004.[4] On May 3, 2005 Defendant Connecticut General moved for partial summary adjudication.[5] In its motion, Connecticut General seeks a decision from this court as to whether the law of Georgia or South Carolina will apply in the matter *sub judice*. Plaintiff Heslin-Kim responded on June 8, 2005. Defendant argues that Georgia law should govern because (1) Dr. Heslin resided, worked and elected coverage in Georgia, (2) the policyholder is an arm of the state of Georgia, and (3) the Board of Regents and Fort Valley State University conduct business in Georgia. Plaintiff argues

---

[4] Connecticut General removed the case on the basis of diversity jurisdiction. The pleadings are somewhat unclear as to what state Connecticut General claims citizenship of, Connecticut or Pennsylvania. Regardless, Connecticut General's principal place of business or state of incorporation does not impact the choice of law question before the court, nor this court's exercise of diversity jurisdiction, as complete diversity exists whether Connecticut General is a citizen of Connecticut or Pennsylvania. There is no dispute that Dr. Heslin was a resident of South Carolina, and that over $75,000 is in controversy.

[5] Motions for partial summary adjudication are governed by the same standards as motions for summary judgment. *See Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1118 (5th Cir. 1992). The court is mindful of that standard in ruling on the matters contained herein.

that South Carolina law should apply because (1) Dr. Heslin was a seven-year resident of South Carolina, (2) Dr. Heslin died in South Carolina, (3) Dr. Heslin's estate is probated in South Carolina, and (4) Dr. Heslin paid premiums for seven years from South Carolina.

## ANALYSIS

This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  In a diversity case, a federal court must apply the choice of law rules of the state in which it is located.  *See Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Spartan Iron & Metal Corp. v. Liberty Ins. Corp.*, 6 Fed. Appx. 176 (4th Cir. 2001); *Bowman v. The Continental Ins. Co.*, No. 99-2540, 2000 WL 1173992, at *3 (4th Cir. June 7, 2000).

South Carolina choice of law encompasses both the traditional *lex loci contractus* doctrine and S.C. Code Ann. § 38-61-10.  Historically, South Carolina courts followed the rule of *lex loci contractus* and applied the law of the state where the insurance contract was formed. *See e.g. Bowman*, 2000 WL 1173992, at *3 (citing *Jones v. Prudential Ins. Co.*, 42 S.E.2d 331, 333 (S.C. 1947)(holding that, under the traditional *lex loci contractus* rule in the absence of § 38-61-10, the contract was governed by the law of the place where it was formed, despite the insured's move into South Carolina where the action was brought); *Unisun Ins. Co. v. Hertz Rental Corp.*, 436 S.E.2d 182, 184 (S.C. Ct. App. 1993)(holding that a contract for insurance is governed by the law of the state where the application was made, the policy delivered and the contract formed).

However, the traditional rule of *lex loci contractus* is modified by S.C. Code Ann. § 38-61-10, a statute enacted in 1947.  That statute provides:

> All contracts of insurance on property, lives, or interests in this State are considered to be made in the state and all contracts of insurance the

4

> applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

S.C. Code Ann. § 38-61-10. "Where this statute applies, it governs as South Carolina's rule of conflicts." *Sangamo Weston Inc. v. Nat'l Surety Corp.*, 414 S.E.2d 127, 130 (S.C. 1992) (applying the code to an insurance contract executed outside the state between non-resident parties because the insured property at issue was located within the state).

In *Sangamo*, the South Carolina Supreme Court considered the applicability of S.C. Code Ann. § 38-61-10 to an insurance contract. *Id.* At issue were insurance policies covering a South Carolina manufacturing facility that had been executed outside of South Carolina by non-citizens of South Carolina. The insured sought a declaratory judgment to determine the scope of insurance coverage. The *Sangamo* court first had to resolve "which state's law should be applied in interpreting these insurance contracts." *Id.* at 129. Critical to this determination was the fact that the insured "property" at issue- Sangamo's manufacturing facility- was located in South Carolina. *Id.* at 130. According to the court, "both parties [although not residents of South Carolina] availed themselves of the law of South Carolina when they respectively provided or received insurance on interests located in this state." *Id.* at 131. Thus, the court reasoned, pursuant to § 38-61-10, South Carolina law applied.

Pursuant to *Sangamo*, then, the court must conduct a two-fold analysis to determine what law applies here. First, the court must consider the applicability of § 38-61-10.[6] *Id.* at 130. Secondly, the court must address whether South Carolina has sufficient contacts creating a state interest in this dispute so that applying South Carolina's substantive law is consistent with the

---

[6] If § 38-61-10 does not apply to an insurance coverage dispute, the court must then determine choice of law through the doctrine *lex loci contractus*. *See Sangamo*, 307 S.C. at 130.

5

Full Faith and Credit Clause and the Due Process Clause. *Id.* at 131.

### A.     Applicability of S.C. Code Ann. § 38-61-10

To determine whether S.C. Code Ann. § 38-61-10 applies, this court first analyzes the expansive first prong of the *Sangamo* test. Pursuant to *Sangamo*, this court's inquiry does not look to where the contract was formed, but instead focuses on whether the subject of the insurance contract is located in South Carolina. 414 S.E.2d at 130,131. "[U]nder the statute[,] it is immaterial where the contract was entered into . . . [w]hat is solely relevant is where the property, lives, or interests insured are located." *Id.* at 130; *see also* S.C. Code Ann. § 38-61-10 ("All contracts of insurance on property, lives, or interests in this State are considered to be made in the state . . . and are subject to the laws of this State.").

Defendant argues that "[c]ourts narrowly have construed *Sangamo* and § 38-61-10." (Def. Mem. at 12). Moreover, according to Defendant, *Sangamo* is distinguishable because "[u]nlike here, the risk insured in *Sangamo* was always located in South Carolina including at the point when the risk was undertaken . . . the contract of insurance in *Sangamo* at its inception was a contract of insurance on 'property in this state.'" (Def. Reply at 3-4).

The court is unconvinced by Defendant's attempt to distinguish *Sangamo*. First, the plain language of § 38-61-10 contemplates a broad application of South Carolina law to insurance contracts with any significant connection to South Carolina. The court is bound by the plain meaning of the statute's language. *See Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001)("unless there is some ambiguity in the language of the statute, a court's analysis must end with the statute's plain language . . . ."). Moreover, *Sangamo* explicitly embraced a broad reading of § 38-61-10's applicability. *See Sangamo*, 414 S.E.2d at 130-131; *Cf. Boardman*

*Petroleum, Inc. v. Federated Mutual Ins. Co.*, 135 F.3d 750, 754 (11th Cir. 1998)("The South Carolina Supreme Court has emphasized that South Carolina's statutory choice-of-law provision applicable to contracts of insurance on property, lives, and interests located within the state was intended to further South Carolina's interest in protecting the rights of its citizens."). Finally, and perhaps most importantly, neither the South Carolina Supreme Court in *Sangamo* nor the statute emphasize location of property or lives upon inception of the insurance contract. Rather, both emphasize only the general location of property, lives and interests within the state and that "it is immaterial where the contract was entered into." *Sangamo*, 414 S.E.2d at 130. Pursuant to *Sangamo* and the statute's plain language, South Carolina's broad jurisdiction over an insurance contract is triggered by the location of the property, lives, and interests within the state, not by the entrance into an insurance contract.

Defendant further argues that lower courts have continued to apply the doctrine of *lex loci contractus*, even after passage of the statute and *Sangamo*. For example, Defendant cites to *Bowman*, 2000 WL 1173992 at *3, a case involving an automobile accident which occurred in South Carolina. In *Bowman*, the insured vehicle was licensed and garaged in Georgia, the insured employer was located in Georgia, and the plaintiff was a resident of Georgia at the time of the accident. *Id.* According to the court, "[t]he only nexus with South Carolina is the location of the automobile collision, which . . . is insufficient, standing alone, to trigger section 38-61-10." *Id.*; *see Auto Owners Ins. Co. v. Sarata*, 33 Fed. Appx. 675, 678 (4th Cir. 2002) (applying Georgia law because the insured involved in a South Carolina accident was covered by an umbrella policy issued in Georgia to a Georgia resident); *Unisun*, 436 S.E.2d at 184 (holding that a car accident in the state that involved a New York resident in a rental car from New York

7

who had executed the rental contract in New York was not enough to warrant the application of S.C. Code Ann. § 38-61-10); *Yeager v. Maryland Casualty Co.*, 868 F.Supp. 141, 142 (D.S.C. 1994)(applying *lex loci contractus* to an automobile case since the plaintiff was a Georgia resident, was covered under a Georgia insurance policy, the accident occurred just over the state line, and the plaintiff was a Georgia resident intending to return home at the end of the trip).

The court finds these cases readily distinguishable for a number of reasons.[7] All of the cases relied upon by Defendant involve merely transient contacts with South Carolina.[8] Here, in contrast, Dr. Heslin permanently resided in South Carolina for seven years prior to his death, paid all of his premiums during these years from South Carolina, and has an estate which was probated within this state. In short, all of the cases cited by Defendant turn on a lack of connection, interest, or nexus to South Carolina. In contrast here, insuring the life of a South Carolina citizen presents a more permanent and definitive connection to this state. Accordingly, in keeping with *Sangamo*, the court holds that § 38-61-10 applies because Connecticut General insured a life in South Carolina.

### B.    Constitutionality of Applying S.C. Code Ann. § 38-61-10

---

[7] While the Defendant argues that "the undisputed facts are indistinguishable from *Bowman* and *Unisun*,"(Def.'s Mem. at 14) this is patently incorrect, as each of those cases involve automobile wrecks with a non-citizen insured.

[8] The only non-automobile accident case cited by Defendant is *Clinton David, Inc. v. Lawyers Title Ins. Corp.*, 1999 WL 125721 (4th Cir. 1999). Defendant's reliance on *Clinton* is misplaced. *Clinton* involved an appeal of the district court's determination of obligations under a title insurance policy. First, while the court made a threshold determination that South Carolina law applied to the dispute, choice of law was not an issue raised on appeal by the parties. Thus, the court had no reason to delve deeply into the question of § 38-61-10's applicability. Moreover, because South Carolina property was at issue and the contract was formed in South Carolina, the court would have reached the same result under *lex loci contractus* or the statute.

The court next considers whether applying the code in the matter *sub judice* is unconstitutional. *Sangamo*, 414 S.E.2d at 131. "[F]or a state's substantive law to be selected consistent with the Full Faith and Credit Clause and the Due Process Clause, the state must have a significant contact or significant aggregation of contacts, creating state interest, so that the choice of its law is neither arbitrary nor fundamentally unfair." *Id.* at 131, *citing Allstate Ins. Co. v. Hauge*, 449 U.S. 302 (1981).

Defendant Connecticut General contends that application of S.C. Code Ann. § 38-61-10 in the matter *sub judice* would be unconstitutional. According to Defendant, "South Carolina has no significant contact with this case . . . [t]he application of its laws to the facts at hand, particularly since the policy was issued to the State of Georgia and administered by an arm of the State of Georgia, would violate the Full Faith and Credit Clause and the Due Process Clause of the Constitution." (Def.'s Reply at 4). The court disagrees. In *Sangamo*, the South Carolina Supreme Court found that "insuring property, lives and interests in South Carolina constitutes a significant contact with this state . . . [a]lthough the parties are not residents of this state, both parties availed themselves of South Carolina when they respectively provided or received insurance on interests located in this state." 414 S.E.2d at 131. Thus, pursuant to *Sangamo*, the court holds that Defendant's provision of life insurance to a seven-year resident of South Carolina allows the application of South Carolina law without offending the Full Faith and Credit Clause or the Due Process Clause.[9]

---

[9] Moreover, public policy considerations support the application of South Carolina law to insurance on property, lives and interests within the state. The state "has a manifest governmental interest in protecting the rights of its citizens." *Johnston v. Commercial Travelers Mutual Accident Ass'n of America*, 131 S.E.2d 91, 94 (S.C. 1963)(holding under a substantially similar former law that the state had sufficient connection with an insurance contract entered into

9

## **CONCLUSION**

It is therefore **ORDERED,** for the foregoing reasons, that Defendant's motion for a partial summary adjudication that Georgia law governs the insurance contract is **DENIED**.[10]

**AND IT IS SO ORDERED**.

**S/ Patrick Michael Duffy**

**PATRICK MICHAEL DUFFY**

**UNITED STATES DISTRICT JUDGE**

**Charleston, South Carolina**

**June 22, 2005**

---

by a resident who paid all premiums from the state and the injury occurred within the state). While not fully analogous to the *Johnston* case, Dr. Heslin did permanently reside in South Carolina and, although he did not enter into the contract here and was not a resident at the time of contract formation, he did pay premiums from the state, died in-state, and his estate is probated here. Once Dr. Heslin moved in 1996 and permanently resided within the state for seven years, the disputed supplemental coverage insured a life and interests within South Carolina. If *lex loci contractus* was applied, laws of the state of the Decedent's residency would not govern this dispute and the court believes that outcome would be contrary to the public policy behind S.C. Code Ann. § 38-61-10 (1989). *See Boardman*, 133 F.3d at 754 ("[I]t appears that the primary policy consideration behind the enactment of § 38-61-10 is the protection of the rights of South Carolina citizen insureds.").

[10] The court refrains from ruling on Defendant's pending Motion to Amend Its Answer, as Plaintiff has yet to respond to that motion. Moreover, the parties inform the court that Plaintiff's earlier filed Motion to Amend the Complaint is moot, as the parties have reached an agreement on the arguments contained therein.